1

2

3

4

5

6                     UNITED STATES DISTRICT COURT

7                     EASTERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| 9  R. NORTH BEACH, INC., an Illinois corporation, | No.  2:15-cv-02014-TLN-CKD |
| 10 | |
| 11         Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| 12     v. | |
| 13 COUNTRY VISIONS, INC., a California Corporation, and KENNETH PETERSEN, | |
| 14         Defendants. | |

15         Plaintiff, R. North Beach, Inc. ("Plaintiff" or "North Beach"), sued Defendants, Country

16  Visions, Inc. ("Country Visions) and Kenneth Petersen ("Petersen") (collectively, "Defendants"),

17  for claims arising out of a franchise relationship between the parties (Compl., ECF No. 1).

18  Defendants move to dismiss Plaintiff's first and second claims as to Petersen only, and the third

19  through tenth claims as to both Petersen and Country Visions (Mot. to Dismiss, ECF No. 16.)[1]

20  The Court has carefully considered the arguments raised by the parties in their briefing.  For the

21  reasons set forth below, Defendants' motion is hereby GRANTED.

22      **I.      FACTUAL BACKGROUND**

23         The Court takes the following facts as true for purposes of this motion.  Country Visions,

24  a California corporation, "sells franchises for specialty retail stores . . . that sell women's fashion

25  [items]."  (Compl. ¶ 8. )  Country Visions' stores are called "Apricot Lane."  Id.  Petersen is the

26  CEO of Country Visions.  Id. ¶ 9.  Plaintiff is an Illinois corporation, and Rod Dixon ("Dixon") is

27

28  _____

[1]      This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for February 9, 2016.

1

1    Plaintiff's "individual principal." Id. ¶ 7.

2         In 2010, Dixon and Petersen spoke about North Beach becoming a franchisee of Country
3    Visions. Id. ¶ 11.  Petersen told Dixon that "Country Visions was a Christian company that
4    supported its franchisees" and that Country Visions had never been involved in a lawsuit with one
5    of its franchisees. Id.  Petersen also stated that Country Visions had a "system for operating
6    franchises . . ., national group buying power . . ., and national name recognition." Id. at 12.
7    Based on Petersen's representations, Dixon, on behalf of North Beach, signed a franchise
8    agreement with Country Visions. Id. ¶ 13.

9         The franchise agreement indicated that Country Visions would provide North Beach with
10   a confidential operations manual, coordination of product distribution, negotiation of discounts,
11   product research and development, inspections and business feedback, and a national advertising
12   fund. Id. ¶ 14.  North Beach alleges that Country Visions "failed to provide any distinctive
13   operations manuals, confidential information, proprietary system, . . . access to exclusive lines,
14   volume discounts, national advertising, or continuing feedback." Id. ¶ 2.  North Beach opened a
15   franchise of Country Visions in Peoria, Illinois. Id. ¶ 15.  North Beach alleges that it has had to
16   spend hundreds of thousands of dollars in marketing, advertising, and developing its own
17   systems. Id. ¶ 2.

18        North Beach, realizing that it could sell more products online, launched a website to sell
19   Apricot Lane products. Id. ¶ 15.  North Beach employees invested time and research into
20   creating the website, and it became very successful. Id.  Petersen contacted North Beach and
21   asked for information about how the website worked. Id. ¶ 16.  Petersen suggested that he was
22   asking for such information to develop a "parallel corporate website" for Country Visions, with
23   the understanding that North Beach "could continue operating its [own] website." Id.  Based on
24   this information, North Beach "provided Country Visions with all of the information necessary to
25   launch a successful Apricot Lane website." Id.  North Beach alleges that it would not have given
26   Country Visions such information had North Beach known that Country Visions would use the
27   information to compete against North Beach and shut down North Beach's website. Id.  Country
28   Visions created its own website, but Country Visions ultimately was unable to make this website

1  successful, and decided to close it in 2013.  Id. ¶ 17.  Country Visions then contacted North

2  Beach with a proposal to launch another website.  Id. ¶ 18.  North Beach alleges that the proposal

3  "eventually led to the creation of MidSouth, LLC, and the dispute set forth in [another] action."

4  Id.

5       North Beach sued Country Visions and Petersen in September 2015 for claims relating to

6  Country Visions' alleged failure to provide certain materials and support for the North Beach

7  franchises and the alleged use of information for Country Visions' website (ECF No. 1.)

8  Defendants move to dismiss North Beach's complaint.  (ECF No. 16.)  North Beach opposes the

9  motion.  (ECF No. 17.)

10      **II.    LEGAL STANDARD**

11       Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain

12  statement of the claim showing that the pleader is entitled to relief."  See Ashcroft v. Iqbal, 556

13  U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the

14  defendant fair notice of what the claim . . . is and the grounds upon which it rests."  Bell Atlantic

15  v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice

16  pleading standard relies on liberal discovery rules and summary judgment motions to define

17  disputed facts and issues and to dispose of unmeritorious claims."  Swierkiewicz v. Sorema N.A.,

18  534 U.S. 506, 512 (2002).

19       On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

20  Cruz v. Beto, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every

21  reasonable inference to be drawn from the "well-plead" allegations of the complaint.  Retail

22  Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

23  "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

24  relief."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

25  factual content that allows the court to draw the reasonable inference that the defendant is liable

26  for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. 544, 556 (2007)).

27       Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

28  factual allegations."  United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir.

3

1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  <u>Iqbal</u>, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  <u>Twombly</u>, 550 U.S. at 555; <u>see also Iqbal</u>, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]"  <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  <u>Iqbal</u>, 556 U.S. at 697 (quoting <u>Twombly</u>, 550 U.S. at 570).  Only where a plaintiff fails to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed.  <u>Id</u>. at 680.  While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."  <u>Id</u>. at 678.  This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Id</u>. at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.  <u>See Mir v. Little Co. of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988); <u>Isuzu Motors Ltd. v. Consumers Union of United States, Inc.</u>, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).  If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'"  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting <u>Doe v. United States</u>, 58 F.3d 484, 497 (9th Cir. 1995)); <u>see also Gardner v. Marino</u>, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).  Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

1   deny such leave is 'particularly broad' where the plaintiff has previously amended its

2   complaint[.]"  Ecological Rights Found. v. Pac. Gas & Elec. Co., 713 F.3d 502, 520 (9th Cir.

3   2013) (quoting Miller v. Yokohama Tire Corp., 358 F.3d 616, 622 (9th Cir. 2004)).

### III.   ANALYSIS

North Beach brings ten causes of action in its complaint: breach of contract, breach of the covenant of good faith, fraud, negligent misrepresentation, violation of the Illinois Franchise Disclosure Act, breach of fiduciary duty, promissory estoppel, unjust enrichment, and unfair competition.  (ECF No. 1.)  Defendants seek to dismiss Plaintiff's first and second claims as to Petersen.  (ECF No. 16 at 1.)  Defendants also seek to dismiss Plaintiff's third through tenth causes of action as to both Petersen and Country Visions.  Id. at 1-2.

### A.   First, Second, and Third Causes of Action

Defendants move to dismiss the first, second, and third causes of action against Petersen. (Mem. of P&A to Mot. to Dismiss ECF No. 9 at 4.)  In response, Plaintiff states that it did not intend to bring the first three causes of action against Petersen.  (Opp'n to Mot. to Dismiss ECF No. 17 at 3-4.)  Thus, the claims against Petersen for breach of contract (first claim), declaratory relief (second claim), and breach of the implied covenant of good faith (third claim), are dismissed with prejudice.

Defendants move to dismiss Plaintiff's third cause of action for breach of the covenant of good faith as brought against Country Visions.  (ECF No. 9 at 7.)  Plaintiff concedes that the Court may dismiss Plaintiff's third cause of action as brought against Country Visions without prejudice.  (ECF No. 17 at 5.)  Thus, Plaintiff's third cause of action against Country Visions is dismissed.  Plaintiff's claims against Country Visions for breach of contract and declaratory relief stand.

### B.   Fourth and Fifth Causes of Action

North Beach's fourth and fifth causes of action are for fraud and negligent misrepresentation, respectively.  (ECF No. 1 at 14–15.)  Defendants argue that the Court should dismiss these claims for two reasons: (1) the claims are barred by the economic loss rule, and (2) the claims are insufficiently pled under the standard required for fraud claims.  (ECF No. 9 at

5, 8.)

### 1. *Economic loss rule*

The economic loss rule "generally bars tort claims based on contract breaches, thereby limiting contracting parties to contract damages." UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc., 2015 WL 4606077, at *4 (C.D. Cal. Jun. 22, 2015) (internal quotation marks omitted).  As to Plaintiff's fraud claim, the economic loss rule does not apply when "a contract is secured by fraudulent representations." Missud v. Oakland Coliseum Joint Venture, 2013 WL 3286193, at *18 (N.D. Cal. Jun. 27, 2013).  Plaintiff argues that because Defendants "fraudulently induced Plaintiff[] to enter into the agreement by making misrepresentations distinct from those obligations arising under the contract[,]" the economic loss rule does not apply.  (ECF No. 17 at 6.)  Taking Plaintiff's allegations as true, Petersen fraudulently induced Plaintiff into entering the Franchise Agreement, thus providing an exception to the economic loss rule.  As such, the economic loss rule does not bar Plaintiff's fraud claim.

California courts have also found an exception to the economic loss rule where the breach of a tort duty is "apart from the general duty not to act negligently." United Guar. Mortgage Indem. Co. v. Countrywide Fin. Corp., 660 F. Supp. 2d 1163, 1181 (C.D. Cal. 2009) (citing Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 988 (2004)).  "The California Supreme Court emphasizes that courts should 'focus[ ] on' intentional conduct when considering whether to allow an exception to the rule. Id. (quoting Robinson Helicopter Co., 34 Cal. 4th at 988).  Thus, "California courts have found exceptions to the economic loss rule in the noncontractual duty category where the conduct also (1) breaches a duty imposed by some types of "special" or 'confidential' relationships; (2) breaches a 'duty' not to commit certain intentional torts; or (3) was committed 'intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages.'" Id. (quoting Robinson Helicopter Co., 34 Cal. 4th at 990).

Here, Plaintiff alleges that Defendants "made the representations . . . of fact that they had no reasonable ground to believe were true, but intended North Beach to rely upon them.  North Beach, not knowing they were false, reasonably relied upon those statements to its detriment in

1  entering into the franchise agreements." (ECF No. 1 at ¶ 75.)  The Court finds that this conduct

2  falls under the exception to the economic loss rule because it was allegedly committed with the

3  intent or knowledge that such a breach would cause substantial consequential damages to

4  Plaintiff.  See id. (quoting Robinson Helicopter Co., 34 Cal. 4th at 990).  Therefore, the

5  economic loss rule does not bar Plaintiff's negligent misrepresentation claim.

6  *2.  Insufficient Pleading*

7  Federal Rule of Civil Procedure 9(b) provides a heightened pleading standard for all

8  "averments of fraud."  Vess v. Ciba–Geigy Corp., 317 F.3d 1097, 1103–1105 (9th Cir. 2003).

9  This includes claims for negligent misrepresentation.  Gardner v. RSM & A Foreclosure Servs.,

10  LLC, 2013 WL 3242211, at *4 (E.D. Cal. Jun. 25, 2013).  Rule 9(b) prescribes that "[i]n alleging

11  fraud or mistake, a party must state with particularity the circumstances constituting fraud or

12  mistake," meaning a plaintiff must plead the "time, place, and specific content of the false

13  representations, as well as the identities of the parties to the misrepresentations."  Swartz v.

14  KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks and citations omitted).

15  Defendants argue that "Plaintiff's fraud claim[s] fail[] completely to identify the place of

16  any alleged misrepresentations or how those misrepresentations were made."  (ECF No. 9 at 6.)

17  Plaintiff argues that the allegations regarding its fraud claims are sufficiently specific.  (ECF No.

18  17 at 4.)  Plaintiff adds in its opposition more detail about the "time" of the alleged fraud, but

19  such details do not appear in the complaint.  See id.  Plaintiff also fails to allege the place or

20  manner of the representations.  The Court therefore dismisses Plaintiff's fourth and fifth causes of

21  action because Plaintiff has not met the heightened pleading standard required under Rule 9.

22  However, Plaintiff shall be granted leave to amend.

23  C.  Sixth Cause of Action

24  Defendants argue that Plaintiff's sixth cause of action for violation of the Illinois

25  Franchise Disclosure Act ("IFDA") should be dismissed because it is barred by the statute of

26  repose and because it is insufficiently pled.  (ECF No. 9 at 5-6, 10.)  Plaintiff concedes that the

27  Court can dismiss Plaintiff's sixth cause of action to the extent that it is based on the franchise

28  agreements entered into in 2010 and 2012.  (ECF No. 17 at 7.)  However, Plaintiff states that its

1   claims for the 2010 and 2012 franchise agreements should be dismissed without prejudice.  Id.

2   This Court does not agree.

3        The limitations period for a cause of action arising under the IFDA is three years.  815 Ill.

4   Comp. Stat. Ann. 705/27.  When a plaintiff brings an IFDA claim for fraudulent practices in

5   connection with a sale of a franchise, the limitations period begins to run when the plaintiff

6   enters into the franchise agreement.  Tuf Racing Products, Inc. v. Am. Suzuki Motor Corp., 1997

7   WL 811021, at *7 (N.D. Ill. Dec. 29, 1997).  Plaintiff did not file its complaint against

8   Defendants until September 23, 2015.  (ECF No. 1 at 19.)  Thus, the statute of limitations bars

9   any claims based on agreements entered into before September 2012.  Thus, Plaintiff's claims for

10  breach of the IFDA based on any agreements entered into before September 23, 2012, are

11  dismissed with prejudice.[2]

12            D.     Seventh Cause of Action

13       Plaintiff's seventh cause of action is for breach of fiduciary duty.  (ECF No. 1 at 16.)

14  Under California law, a franchisee/franchisor relationship does not in itself create a fiduciary

15  relationship.  Boat & Motor Mart v. Sea Ray Boats, Inc., 825 F.2d 1285, 1292 (9th Cir. 1987).

16  Absent a fiduciary duty imposed by law, a fiduciary relationship may exist when a party

17  "knowingly undertake[s] to act on behalf and for the benefit of another."  City of Hope Nat.

18  Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 386 (2008).

19       Defendants argue that Plaintiff's seventh cause of action for breach of fiduciary duty

20  must be dismissed because there is no fiduciary relationship between Plaintiff and Defendants.

21  (ECF No. 9 at 10.)  Defendants argue first that the relationship between Plaintiff and Country

22  Visions as franchisor and franchisee does not create a fiduciary relationship, and second, the

23  franchise agreements specifically state that the agreements do not create a fiduciary relationship

24  between the parties.  Id. at 10-11.

25       Plaintiff concedes that the franchisor/franchisee relationship alone does not create a

26  fiduciary duty.  (ECF No. 17 at 7.)  Plaintiff argues that "many courts" have found a fiduciary

27  _____

28  [2]     As to Plaintiff's fourth and fifth causes of action, Plaintiff also fails to sufficiently plead the time and place of the alleged violation of the IFDA.  Plaintiff's IFDA claims for any agreements entered into after September 23, 2012, are dismissed based on insufficient pleading, but Plaintiff may amend such claims.

1    relationship between a franchisee and a franchisor.  (ECF No. 17 at 8.)  However, none of the

2    cases that Plaintiff cites apply California law.  See Bain v. Champlin Petroleum Co., 692 F.2d

3    43, 48 (8th Cir. 1982) (applying Missouri law); Lynch v. Math-U-See, Inc., 2013 WL 796531, at

4    *6 (N.D. Ind. Mar. 4, 2013) (applying Pennsylvania law); Eulrich v. Snap-On Tools Corp., 121

5    Or. App. 25, 36 (1993) cert. granted, judgment vacated, 512 U.S. 1231 (1994) (applying Oregon

6    law); Lake Erie Distrib., Inc. v. Martlet Imp. Co., 221 A.D.2d 954, 955 (1995) (applying New

7    York law).  Even worse, Plaintiff mischaracterizes one of the cases.  Plaintiff states that the Bain

8    court found "a fiduciary relationship between a franchise and a franchisor."  (ECF No. 1 at 8.)

9    But the Bain court explicitly found that there was no evidence or case law to support finding a

10   fiduciary relationship between a franchisee and franchisor.  Bain, 692 F.2d at 47.  The other

11   cases Plaintiff cites to are also inapplicable, not only because they apply other states' laws, but

12   also because they do not support Plaintiff's proposition that "many courts have found that a

13   fiduciary relationship may . . . exist between a franchisee and its franchisor."  (ECF No. 17 at 8.)

14   Fore example, in Lynch, there was a manufacturer/distributor relationship, not a

15   franchisee/franchisor relationship.  Lynch, 2013 WL 796531, at *6.  Additionally, in Lynch, the

16   distributor relinquished control over the business to the manufacturer.  Id.  The opposite is true

17   here, as North Beach alleges that Country Visions gave Plaintiff's franchise no support.

18   Similarly, in Eulrich, not only was there was no franchisor/franchisee relationship, but that

19   judgment was vacated.  See Snap-On Tools Corp. v. Eulrich, 512 U.S. 1231 (1994) (vacating

20   judgment in Eulrich v. Snap-On Tools Corp., 121 Or. App. 25, 36 (1993)).  Finally, Lake Erie

21   concerned a distribution relationship, not a franchise/franchisee relationship, and the court stated

22   that a distribution agreement may give rise to a fiduciary duty only "in some rare instances."

23   Lake Erie, 221 A.D.2d at 955.  Defendant states that Plaintiff "does not cite to a single case

24   which has ever engrafted fiduciary duties onto the franchisor/franchisee relationship under

25   California law, and to [Defendants'] knowledge, none in fact exists."  (Reply, ECF No. 21 at 1–

26   2.)  The Court concurs with Defendants, as it is not aware of any binding authority which finds a

27   fiduciary relationship between a franchisee and a franchisor.

28           Plaintiff also argues that it has nevertheless shown that a fiduciary relationship existed

between the parties by alleging that "Defendants' representations were made outside of the franchise agreement" and that Defendants made such representations to "induce Plaintiff[] to . . . part with confidential information that [Plaintiff was] not required to disclose."  (ECF No. 17 at 8.)  These allegations are insufficient to create a fiduciary relationship.  Country Visions did not "knowingly undertake to act on behalf of" North Beach, as is required to establish a fiduciary duty absent one imposed by the law.  See City of Hope, 43 Cal. 4th at 386.  Plaintiff's allegations that Defendants convinced North Beach to trust them with confidential information do not create a fiduciary relationship, and Plaintiff cites to no binding authority that suggests otherwise.

Additionally, the franchise agreement specifically states that it does not create a fiduciary duty between Plaintiff and Defendants.  Country Visions Inc. Franchise Agreement § 21.A., attached to Mot. as Exh. A (Doc. #9-1).  Plaintiff does not respond to this issue in its opposition.

Because no court applying California law has found a fiduciary duty in a franchise relationship and because there are no allegations in Plaintiff's complaint which suggest that a fiduciary relationship otherwise existed, granting Plaintiff leave to amend its claim for breach of fiduciary duty would be futile.  Thus, Plaintiff's seventh cause of action is dismissed with prejudice.

E.     Eighth Cause of Action for Promissory Estoppel

Plaintiff alleges that North Beach gave Defendants "confidential and proprietary information" only because Defendants represented that they would "use information about North Beach's website only for the mutual benefit of North Beach and Country Visions."  (ECF No. 1 at ¶ 90.)  Plaintiff states that "under a theory of promissory estoppel, North Beach is entitled to recover the value of its investment in information" for the website.  Id. ¶ 92.  Defendant argues that Plaintiff's promissory estoppel claim must be dismissed for two reasons: first, "a plaintiff cannot state a claim for promissory estoppel where a valid contract governs the same subject matter," and second, "Plaintiff has not adequately alleged the elements of a promissory estoppel claim."  (ECF No. 9 at 11, 12.)

*1.   Existence of a Valid Contract that Covers the Same Subject Matter*

Defendants argue that sections 13(C)-(E) and 14(L) of the Franchise Agreements require

1   Plaintiff to give Country Visions information about North Beach's website.  (ECF No. 9 at 12.)

2   Plaintiff argues that not only is information about a website not covered by the Franchise

3   Agreements, but such information was not even contemplated when the parties entered into the

4   agreement.  (ECF No. 17 at 9–10.)  Plaintiff's argument is more persuasive.  There is absolutely

5   no discussion of website information in the franchise agreements, and thus such agreements do

6   not preclude a promissory estoppel claim.

7                      *2.  Failure to Allege All Elements of Promissory Estoppel*

8              The elements of a promissory estoppel claim are (1) a clear and unambiguous promise,

9   (2) reasonable and foreseeable reliance by the promise, and (3) injury to the party asserting

10  estoppel.  Granadino v. Wells Fargo Bank, N.A., 236 Cal.App.4th 411, 416 (2015), as modified

11  (Apr. 29, 2015).  Defendants argue that Plaintiff has failed to allege a "clear and unambiguous

12  promise."  (ECF No. 9 at 12.)  Plaintiff argues that its allegations—that "Country Visions and

13  Peterson [sic] represented, through its [sic] conduct, that it [sic] would use information about

14  North Beach's website only for the mutual benefit of North Beach and Country Visions"—are

15  sufficient to show a "clear and unambiguous promise."  (ECF No. 17 at 10.)  The Court agrees

16  with Defendants.  The allegation that the Defendants "represented" something to Plaintiff

17  through their "conduct" is insufficient to show an "unequivocal promise."  As such, Plaintiff's

18  eighth cause of action is dismissed with leave to amend.

19                      F.  Ninth Cause of Action For Unjust Enrichment

20             Defendants make two arguments to dismiss Plaintiff's unjust enrichment claim.  First,

21  Defendants argue that Plaintiff cannot proceed on an unjust enrichment claim because there is a

22  valid contract on the subject matter.  (ECF No. 9 at 13.)  As discussed above regarding Plaintiff's

23  promissory estoppel claim, there is nothing discussed in the franchise agreements regarding a

24  website, and so the franchise agreements do not preclude an unjust enrichment claim.

25             Defendants also argue that there is no cause of action for unjust enrichment in California.

26  Id.  Defendant is correct: "[u]njust enrichment is not a cause of action under California law."

27  McVicar v. Goodman Global, Inc., 1 F. Supp. 3d 1044, 1059 (C.D. Cal. 2014).  However, as

28  Plaintiff correctly notes, when "a plaintiff alleges unjust enrichment, a court may 'construe the

1    cause of action as a quasi-contract claim seeking restitution.'" <u>Astiana v. Hain Celestial Grp.,</u>

2    <u>Inc</u>., 783 F.3d 753, 762 (9th Cir. 2015) (quoting <u>Rutherford Holdings, LLC v. Plaza Del Rey</u>,

3    223 Cal. App. 4th 221, 231 (2014)).  Thus, the Court will construe Plaintiff's unjust enrichment

4    claim as a claim for quasi-contract.  Defendants do not argue that Plaintiff has failed to allege the

5    necessary elements of quasi-contract.

6            Defendants' motion to dismiss Plaintiff's unjust enrichment claim is denied, however,

7    Plaintiff should correctly label its unjust enrichment claim as a quasi-contract claim in its

8    amended complaint.

9                    G.      <u>Tenth Cause of Action for Violation of the Unfair Competition Law</u>

10            Plaintiff alleges that Defendants violated California Business and Professions Code

11    § 17200, et seq. by using "unfair, unlawful, and fraudulent business practices" by "wrongfully

12    obtaining proprietary information from North Beach; using that information to establish a

13    competing website, and by failing to provide the support and other services promised."  (ECF

14    No. 1 at ¶ 97.)  Defendants challenge Plaintiff's allegations under each prong of the UCL: unfair,

15    unlawful, and fraudulent.

16                            *1.  Fraudulent Prong*

17            Defendants argue that the Court must dismiss Plaintiff's claim under the "fraudulent"

18    prong of the UCL because Plaintiff's claim fails to meet the pleading requirements applicable to

19    fraud claims.  (ECF No. 9 at 13.)  Plaintiff barely responds to this argument, stating only that

20    "Plaintiff's UCL claim is pled with adequate sufficiency to sustain a claim for violation of the

21    UCL."  (ECF No. 17 at 12–13.)  Defendants state that they "cannot determine whether Plaintiff

22    is relying on a unified course of fraudulent conduct, or even what conduct (if any) Plaintiff

23    actually contends is fraudulent."  (ECF No. 9 at 13.)  The Court agrees with Defendants.

24    Plaintiff does not specify which of Defendants' actions were fraudulent.  Plaintiff's allegations

25    regarding the fraudulent prong of the UCL do not meet the applicable pleading standard.

26    Plaintiff's claim under the fraudulent prong of the UCL is dismissed with leave to amend.

27    ///

28    ///

1

### 2. *Unlawful Prong*

2      Defendant argues that Plaintiff's claim on the "unlawful" prong fails because Plaintiff has

3  not alleged anything that Defendants did that was against the law. (ECF No. 9 at 11.) Plaintiff

4  argues that its unlawful prong is predicated on the alleged violation of the IFDA. (ECF No. 17 at

5  13.) In reply Defendant asserts that Plaintiff has not "pled a viable claim under the IFDA," and

6  therefore the IFDA claim cannot serve as a predicate for Plaintiff's UCL claim. (ECF No. 21 at

7  5.) As discussed above, Plaintiff has not met the pleading standard required for a claim under

8  the IFDA. Thus, at this point, Plaintiff cannot predicate its UCL claim on the alleged IFDA

9  violation.

10      Plaintiff also argues that its common law claims can serve as the basis for the unlawful

11  prong of the UCL. (ECF No. 17 at 13.) District courts disagree as to whether common law

12  claims can serve as bases for claims under the "unlawful" prong of the UCL. Compare Abels v.

13  Bank of Am., 2011 WL 1362074, at *4 (N.D. Cal. Apr.11, 2011) (an act is unlawful if it

14  "violates an underlying state or federal statute or common law") and Osei v. Countrywide Home

15  Loans, 692 F.Supp.2d 1240, 1254 (E.D. Cal. 2010) (same) with Stearns v. Select Comfort Retail

16  Corp., 763 F.Supp.2d 1128, 1150 (N.D. Cal. 2010) (negligence claims "may not constitute

17  predicate acts for a UCL claim") and Joe Hand Promotions, Inc. v. Alvarado, 2011 WL 1544501,

18  at *7 (E.D. Cal. Apr. 21, 2011), (report and recommendation adopted, 2011 WL 1773296 (E.D.

19  Cal. May 9, 2011) (same)). Defendant cites to a Ninth Circuit case which states that "a common

20  law violation such as breach of contract is insufficient" to serve as a predicate claim under the

21  unlawful prong of the UCL." Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035,

22  1044 (9th Cir. 2010). Because the Ninth Circuit case is the only binding authority that the Court

23  is aware of to decide this issue, the Court holds that Plaintiff cannot predicate its UCL

24  "unlawful" claim on common law violations. Defendant's motion to dismiss Plaintiff's

25  "unlawful" UCL claim is granted with leave to amend.

26

### 3. *Unfair Prong*

27      "A business practice is unfair within the meaning of the UCL if it violates established

28  public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to

13

consumers which outweighs its benefits." <u>McKell v. Wash. Mut., Inc.,</u> 142 Cal.App.4th 1457, 1473 (2006).

Defendants argue that Plaintiff describes itself as a competitor of Country Visions, and that the definition of unfair that applies in the "direct competitor" context should apply. (ECF No. 17 at 14; ECF No. 21 at 5.) However, the parties are not "direct competitors." County Visions is the franchisor, and North Beach is the franchisee. Defendants' argument that North Beach and Country Visions are direct competitors and that therefore a different "unfair" standard applies is unavailing. However, Defendants correctly argue that Plaintiff fails to identify any "established public policy" that Defendants violated. (ECF No. 9 at 14.) Further, Plaintiff does not allege any "injury to consumers." Thus, Plaintiff's claim under the unfair prong of the UCL is dismissed with leave to amend.

## IV.   CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART and DENIES IS PART Defendants' motion to dismiss:

(1) The first, second, and third causes of action as brought against Petersen are DISMISSED with prejudice;

(2)  The third cause of action as brought against Country Visions is DISMISSED with leave to amend;

(3) The fourth, fifth, eighth, and tenth causes of action are DISMISSED with leave to amend;

(4) Plaintiff's sixth cause of action based on franchise agreements entered into before September 23, 2012 is time barred and thus is DISMISSED with prejudice. Any claims based on agreements entered into after that date are DISMISSED with leave to amend. Plaintiff's seventh cause of action is dismissed with prejudice; and

(5) Defendants' motion to dismiss Plaintiff's ninth cause of action is DENIED.

///

///

///

14

(6) North Beach must file its first amended complaint within thirty (30) days of the date of this order.  Defendants must file their responsive pleading within twenty days after Plaintiff files its amended complaint.

IT IS SO ORDERED.

Dated: April 26, 2016

Troy L. Nunley
United States District Judge

15